1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CODY HATTOX, | ) | Civil No. 12cv2597-AJB (KSC) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING PLAINTIFF'S |
| | ) | MOTION TO REMAND |
| v. | ) | |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | |
| INSURANCE COMPANY, an Illinois | ) | (Doc. No. 17) |
| corporation, CORINNE STEINMAN, an | ) | |
| individual, SUZANNE JONES, an individual, | ) | |
| and DOES 1 through 10, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

Presently before the Court is Plaintiff Cody Hattox's ("Plaintiff") motion to remand.  (Doc. No. 7.)  On September 10, 2012, Plaintiff filed a complaint against Defendants State Farm Automobile Insurance Company ("State Farm"), Corrine Steinman ("Steinman"), and Suzanne Jones ("Jones") (collectively, "Defendants") in San Diego Superior Court.  (Doc. No. 1.)  The complaint alleged eleven state law causes of action, including two causes of action for intentional and negligent infliction of emotional distress.  State Farm removed the action to federal court on October 24, 2012, asserting diversity jurisdiction pursuant 28 U.S.C. §§ 1332 and 1441(a) and (b).  In accordance with Civil Local Rule 7.1.d.1, the Court found the motion suitable for determination on the papers and vacated the hearing set for January 24, 2013.  For the reasons set below, the Court **GRANTS** Plaintiff's motion to remand, DENIES Plaintiff's motion for fees and costs and remands the action to San Diego Superior Court.

***BACKGROUND***

**I.      Relevant Factual Allegations**

From about January 1, 2009 to May 31, 2012, Plaintiff was employed by Defendant State Farm. (Doc. No. 1, Compl. ¶ 14.)  During this time, Plaintiff served as the office manager at the State Farm office located at 5375 Kearny Villa Road, Suite 102, San Diego, California 92123 (the "Office").  (*Id*.) Up until July 2011, Plaintiff reported directly to Defendant Steinman, an agent at the State Farm Office. (*Id*. at ¶ 16.)  Around March or April of 2011, however, Steinman informed Plaintiff of her intent to accept a position at another State Farm office.  (*Id*.)  As a result, Plaintiff would no longer report directly to Steinman, and instead was directed to report to Defendant Jones, an Agency Field Executive.  (*Id*. at ¶ 17.)  Concurrent with the change in supervisory personnel, Jones presented Plaintiff with a Staff Assistance Agreement (the "Agreement").  (*Id*. at ¶ 16.)  Pursuant to the Agreement, Plaintiff would be State Farm's employee from July 1, 2011 through June 30, 2012, and would receive medical benefits from State Farm during that time period.  (*Id*.)  The Agreement also stated that Plaintiff would provide "staff assistance following the death or retirement of a State Farm agent," which Plaintiff understood was a reference to Defendant Steinman.  (*Id*.)

Plaintiff performed under the Agreement without incident until early October 2011, at which time Plaintiff informed Jones that she was pregnant.  (*Id*. at ¶ 19.)  Thereafter, Plaintiff alleges that Jones became hostile and threatened to terminate the Agreement, even though termination of the Agreement would leave Plaintiff without medical care during the remainder of her pregnancy.  (*Id*.)  Plaintiff also alleges that Jones contacted Mr. Hattox's office, Plaintiff's husband, to see if his office could cover Plaintiff's medical benefits.  (*Id*. at ¶ 21.)  Thereafter, Plaintiff contacted Debbie Taylor ("Taylor"), the Senior Occupational Health Nurse for State Farm to inquire about taking leave under the Family Medical Leave Act ("FMLA").  (*Id*. at ¶ 22.)   Taylor informed Plaintiff that State Farm only considers time as a State Farm employee, and not as an employee of an agent when computing eligibility for FMLA.  (*Id*.)  As a result, Plaintiff's request for FMLA leave was denied.  (*Id*.)

Plaintiff subsequently became concerned that State Farm would not honor the terms of the Agreement, and informed Jones that she was looking for other employment opportunities within State

12cv2597 AJB (KSC)

Farm.  (*Id.* at ¶ 23.)  In response, Jones informed Plaintiff that this was "okay," but that Plaintiff would probably not get hired because of how far along Plaintiff was in her pregnancy.  (*Id.*)  After Plaintiff spoke with Jones she applied for various openings at State Farm, but was not offered any of the positions despite being qualified.  (*Id.*)  Thereafter, Jones stop communicating with Plaintiff.  (*Id.*)

Plaintiff continued working at State Farm until April 12, 2012, the day before she delivered her baby.  (*Id.* at ¶ 24.)  Thereafter, Jones sent Plaintiff a letter demanding Plaintiff's resignation.  (*Id.*)  Plaintiff refused to resign, at which time Plaintiff became aware that State Farm had placed Plaintiff on pregnancy disability leave.  (*Id.* at ¶ 25.)  While Plaintiff was out on leave, Plaintiff received notice from human resources that she had resigned, notice from human resources that she was terminated, and bills from State Farm for medical insurance premiums that Jones had ceased paying as of May 2012.  (*Id.* at ¶ 25.)  Plaintiff was eventually terminated on June 22, 2012, effective May 31, 2012, for "End of Contract."  (*Id.* at ¶ 26.)

Plaintiff filed a complaint in San Diego Superior Court against all Defendants on September 10, 2012.  The complaint includes eleven state law causes of action: 1) pregnancy discrimination; 2) sex discrimination; 3) failure to accommodate disability; 5) failure to engage in the interactive process; 6) failure to prevent discrimination; 7) violation of the California Family Rights Act "CFRA"); 8) retaliation for the exercise of rights pursuant to CFRA; 9) wrongful termination in violation of public policy; 10) intentional infliction of emotional distress; and 11) negligent infliction of emotional distress.  The first nine causes of action are alleged solely against State Farm and Steinman, and the tenth and eleventh causes of action are alleged against all Defendants.

State Farm removed the action to this Court on October 24, 2012, alleging complete diversity pursuant to 28 U.S.C. § 1332.[1]  (Doc. No. 1.)  Specifically, State Farm alleged that the amount in controversy exceeds $75,000.00, and that Defendants Steinman and Jones were fraudulently joined as sham defendants for the sole purpose of destroying complete diversity.  (*Id.* at pp. 5, 6.) Thus, State Farm argues that because State Farm is an Illinois corporation, with its principal place of business in

---

[1] Steinman and Jones filed a notice of joinder in State Farms' notice of removal on November 21, 2012, three days after Plaintiff filed the instant motion to remand.  (Doc. Nos. 11, 12.)

1    Illinois, the Court has subject matter jurisdiction to adjudicate the claim.  Plaintiff filed the instant

2    motion to remand on November 19, 2012.  (Doc. No. 7.)

3                                              ***LEGAL STANDARD***

4              The right to remove a case to federal court is entirely a creature of statute.  *See Libhart v. Santa*

5    *Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  The removal statute, 28 U.S.C. § 1441, allows

6    defendants to remove an action when a case originally filed in state court presents a federal question, or

7    is between citizens of different states and involves an amount in controversy that exceeds $75,000.  *See*

8    28 U.S.C. §§ 1441(a), (b); 28 U.S.C. §§ 1331, 1332(a).  Only state court actions that could originally

9    have been filed in federal court can be removed.  28 U.S.C. § 1441(a).  *See also Caterpillar Inc. v.*

10   *Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987); *Ethridge v. Harbor House Rest.*,

11   861 F.2d 1389, 1393 (9th Cir. 1988).

12             "[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the

13   amount in controversy exceed $75,000."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089,

14   1090 (9th Cir. 2003); *see* 28 U.S.C. § 1332(a)(1).  Complete diversity requires that the plaintiff's

15   citizenship is diverse from that of each named defendant.  28 U.S.C. §§ 1332(a)(1), 1332(c)(1);

16   *Caterpillar*, 519 U.S. at 68 n. 3.  Whether or not complete diversity is present is determined at the time

17   of removal.  *See Am. Dental Indus., Inc. v. EAX Worldwide, Inc.*, 228 F. Supp. 2d 1155, 1157 (D. Or.

18   2002); *In re Haw. Fed. Asbestos Cases*, 960 F.2d 806, 810 (9th Cir. 1992) (stating that diversity of

19   citizenship is determined by the court at "the time of the filing of a complaint").

20             The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and

21   "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first

22   instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662,

23   663 (9th Cir. 1988).  "The 'strong presumption' against removal jurisdiction means that the defendant

24   always has the burden of establishing that removal is proper."  *Id.* (citing *Nishimoto v. Federman*

25   *–Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *McNutt v. Gen. Motors Acceptance Corp.*

26   *of Ind., Inc.*, 298 U.S. 178, 189 (1936) (finding that the removing party must prove its allegations by a

27   preponderance of the evidence).  The Court takes this proof from the notice of removal and may, if it

28

1  chooses, construe the opposition to the motion to remand as an amendment to the notice of removal.

2  *See Cohn v. Petsmart Inc*., 281 F.3d 837, 840 n. 1 (9th Cir. 2002).

3  ### *DISCUSSION*

4  State Farm contends the Court has jurisdiction over the instant matter because Steinman and

5  Jones were fraudulently joined for the sole purpose of defeating diversity.  Specifically, State Farm

6  argues that: (1) Steinman's citizenship should be disregarded because she was no longer working in the

7  same office as Plaintiff, nor was she Plaintiff's employer or supervisor at the time of the alleged

8  discriminatory conduct; and (2) Jones' citizenship should be disregarded because the tenth and eleventh

9  causes of action—the only causes of action alleged against Jones—are preempted by California's

10  Workers' Compensation Act, barred under principles of managerial immunity, are an improper way to

11  seek tort damages in the employment conduct, and fail to state a claim as a matter of law.  Plaintiff

12  argues State Farms' removal was defective because the notice of removal was filed by State Farm rather

13  than all Defendants, and nonetheless, State Farm has failed to establish that Steinman and Jones are

14  sham Defendants.  Because Steinman and Jones subsequently joined State Farms' notice of removal, the

15  Court only addresses State Farms' contention that Steinman and Jones were fraudulently joined to defeat

16  diversity.

17  **I.    Fraudulent Joinder Standard**

18  A district court may disregard a non-diverse party named in the state court complaint and retain

19  federal jurisdiction if the non-diverse party is joined as a sham defendant or if the joinder is fraudulent.[2]

20  *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  Joinder is deemed fraudulent if the

21  plaintiff fails to state a cause of action against the non-diverse defendant, and "that failure is obvious

22  according to the well-settled rules of the state."  *Nasrawi v. Buck Consultants, LLC,* 776 F. Supp. 2d

23  1166, 1175 (E.D. Cal. 2011); *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998).  This

24  requires the court to find that "there is absolutely no possibility that the plaintiff will be able to establish

25  a cause of action against the non-diverse defendant in state court."  *Briano v. Conseco Life Ins. Co.*, 126

---

28  [2] The term "fraudulent joinder" is a term of art that is used for removal purposes, and does not connote any intent to deceive on the part of plaintiff or his counsel.  *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal.1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983).

12cv2597 AJB (KSC)

F. Supp. 2d 1293, 1296 (C.D. Cal. 2000); *Hunter v. Phillip Morris,* 582 F.3d 1039, 1044-46 (9th Cir. 2009).

In making this determination, "[t]he court's job is not to determine whether the plaintiff will actually or even probably prevail on [the] merits of his claim, but rather to evaluate whether there is any possibility plaintiff may do so." *Archuleta v. Am. Airlines, Inc.*, 2000 WL 556808 *4 (C.D. Cal. May 12, 2000). Thus, a non-diverse defendant is only deemed a sham defendant if, after all disputed questions of fact and ambiguities of law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned. *See Kruso v. Int'l Tel. & Tel. Corp.,* 872 F.2d 1416, 1426 (9th Cir. 1989); *Bear Valley Family, L.P. v. Bank Midwest, N.A.,* 2010 U.S. Dist. LEXIS 93460, at *7, 2010 WL 3369600 (C.D. Cal. Aug. 23, 2010) (stating that courts generally disfavor the doctrine of fraudulent joinder, and any ambiguity of law or fact must be resolved in favor of remand).

The removing party bears the burden to prove that a defendant has been fraudulently joined "by clear and convincing evidence." *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)); *Burris v. AT&T Wireless, Inc.,* 2006 WL 2038040, at *2 (N.D. Cal. 2006) (stating that remand must be granted unless the defendant shows that the plaintiff "would not be afforded leave to amend his complaint to cure [the] purported deficiency"); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998) ("[T]he defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant.").

A.      **Fraudulent Joinder of Defendant Steinman**

State Farm argues Steinman was fraudulently joined because Steinman was no longer working in the same office as Plaintiff, nor was she Plaintiff's employer or supervisor at the time of the alleged discrimination. State Farm contends Plaintiff admits to this in her pleadings because Plaintiff alleges that she did not suffer any alleged discrimination until October 2011, almost four months after Steinman was relocated to another State Farm office. (Compl. ¶¶ 12, 16, 17, 19.) In response, Plaintiff argues the complaint specifically alleges that Steinman was a managing agent of State Farm at all relevant times,

and/or an employer as the term is defined by California Government Code §§ 12926, 12940, and 12945. Accordingly, because all eleven causes of action are plead against Steinman, and Steinman never provided Plaintiff with any notice of any change in employment status, Plaintiff alleges Steinman had a duty to prevent the alleged harassment and discrimination.

Although State Farm correctly highlights Plaintiff's admission that Steinman was no longer employed at Plaintiff's Office at the time of the alleged discriminatory conduct, State Farm overlooks that Plaintiff has alleged that Steinman was her employer during the entirety of her employment with State Farm, or in the alternative, that Steinman was her joint employer. *See Vernon v. State of Cal.* (2004) 116 Cal. App. 4th 114, 124 (stating that "employer" is a term of art and the test for determining whether an employer/employee relationship exists focuses on the existence of and amount of control the defendant has over the plaintiff's performance of employment duties). Therefore, because the complaint alleges a transitional period between agents at the State Farm Office, it is entirely plausible that although Steinman was no longer located in the same office as Plaintiff, Steinman continued to function, to some degree, as Plaintiff's employer. Accordingly, the Court cannot not state that all eleven causes of action alleged against Steinman fail under well settled principles of California law.[3]

### B.       Fraudulent Joinder of Defendant Jones

State Farm next argues that Jones was fraudulently joined because the tenth and eleventh causes of action—the only claims affirmatively pled against Jones—are barred as a matter of law. Specifically, State Farm argues Plaintiff's claims: (1) are preempted by the exclusivity provisions of California's Workers' Compensation Act; (2) are an impermissible attempt to obtain tort damages in the employment context; (3) are barred by the doctrine of managerial immunity; and (4) fail to state a claim for which relief can be granted. State Farms' first three arguments all concern the viability of Plaintiff's tort causes of action in light of the exclusivity provisions of the Workers' Compensation Act. Accordingly, the Court addresses possible preemption under the Act, followed by whether Plaintiff has alleged

_____

[3] Even if the Court found Steinman was fraudulently joined to defeat diversity, remand would still be proper because the Court finds Jones was not fraudulently joined. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000.")

12cv2597 AJB (KSC)

sufficient facts to state a claim for emotional distress.

## 1.    Preemption Under California's Workers' Compensation Act

Subject to certain narrow exceptions, recovery under workers' compensation is the exclusive remedy for injuries occurring within the course of employment.  *See* Cal. Lab. Code, §§ 3600, 3601 ("Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, . . . the sole and exclusive remedy of the employee or his or her dependents against the employer, . . . "); *Pichon v. Pac. Gas & Elec. Co.* 212 Cal. App. 3d 488, 494.  The test for deciding whether a plaintiff may pursue a tort action, or is confined to a workers' compensation proceeding, is based on whether the acts complained of are normally within an employer-employee relationship. *Potter v. Ariz. So. Coach Lines, Inc*., 202 Cal. App. 3d 126, 133; *Hart v. Nat'l Mortg. & Land Co.* (1987) 189 Cal. App. 3d 1420, 1429 (rejecting the "physical harm" versus "emotional harm" test).  If allegations concern those activities that are normally within the employer-employee relationship, such allegations are preempted by the Workers' Compensation Act.  *Id.*

The California Supreme Court has held that "demotions, promotions, criticism of work practices, and frictions in negotiations as to grievances" are misconduct attributed to the employer that are the normal part of the employment relationship.  *Cole v. Fair Oaks Fire Prot. Dist*. (1987) 43 Cal. 3d 148, 160.  Courts have also held that dismissal from employment is a normal risk inherent in the employment relationship because it necessarily arises from employment.  *Zilmer v. Carnation Co.* (1989) 215 Cal. App. 3d 29, 40.  This reasoning has recently been extended to find that emotional distress claims arising from a previous dismissal, which occurred during the normal part of the employment relationship, are also barred by the Workers' Compensation Act.  *Accardi v. Super. Ct.*, 17 Cal. App. 4th 341, 352 (1993) ("Emotional distress caused by misconduct in employment relations involving, for example, promotions, demotions, criticism of work practices, [or] negotiations as to grievances, is a normal part of the employment environment. A cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law"), disapproved of on other grounds, *Richards v. CH2M Hill, Inc*., 26 Cal. 4th 798, 802 (2001).

However, the California Legislature did not intend to allow an employer "to raise the exclusivity

rule [under the Workers' Compensation Act] for the purpose of deflecting a claim of discriminatory practices." *Accardi*, 17 Cal. App. 4th at 352-53. Therefore, "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices." *Id*; *see also Watson v. Dep't of Rehab*., 212 Cal. App. 3d 1271, 1287 (1989) ("[T]he allegations and evidence in this case do not involve conduct which can be expected normally to occur in the workplace and which is part of the employment risk. Prohibited racial and age discrimination are against the law and policy of this state. Such discrimination is not a normal incident of employment, no less for an employee of the state than for one employed in the private sector. We therefore conclude that Watson is not limited to worker's compensation for her injuries . . ."); *Hart v. National Mortg. & Land Co.*, 189 Cal. App. 3d 1420, 1431 (finding that an employer may be liable in tort if he commits an act not reasonably anticipated in an employer-employee relationship).

Here, the complaint alleges Defendants acted in an extreme and outrageous manner by, among other things, threatening to cancel Plaintiff's employment contract after learning she was pregnant, contacting Mr. Hattox's place of employment to inquire as to whether his employer could cover Plaintiff's pregnancy related medical expenses, denying Plaintiff job opportunities within State Farm on account of her pregnancy, demanding her resignation the same day she gave birth, and ceasing payment of medical insurance premiums while she was on Pregnancy Disability Leave. Thus, because the conduct underlying Plaintiff's intentional infliction of emotional distress claim is based on allegations of disability discrimination—specifically, disability based on pregnancy—the Court finds Plaintiff's claims against Jones are not barred by the exclusivity provisions of the Workers' Compensation Act.[4]

The same is true for State Farm's argument that Plaintiff's emotional distress claims are barred by the California Supreme Court's decision in *Foley v. Interactive Data Corporation* (1988) 47 Cal. 3d 654, which bars recovery of tort damages in the employment context. Although State Farm is correct

---

[4] The Court finds State Farms' reliance on *Miklosy v. Regents of Univiversity of California*, 44 Cal. 4th 876, 902 (2008) misplaced. In *Miklosy* the court held that the plaintiff's claims were preempted by the Workers' Compensation Act because "whistle blower retaliation" is a risk inherent in the normal employment relationship, and plaintiff's *Tameny* action was barred as a matter of law. Here, Plaintiff alleges pregnancy discrimination, which is not a risk inherent in the normal employment relationship, nor otherwise barred as a matter of law from the facts as alleged.

12cv2597 AJB (KSC)

that *Foley* stands for the general proposition that damages for emotional distress are not recoverable in a wrongful discharge action, State Farm fails to recognize that the exceptions to this doctrine, which may be applicable here, are just as important as the general rule.  For example, the *Foley* court described three theories under which a wrongful termination action may be brought: (1) a tort cause of action for discharge in violation of public policy; (2) a contract cause of action for breach of an express or implied-in-fact agreement to discharge for good cause only; and (3) a cause of action for breach of the implied-in-law covenant of good faith and fair dealing.  *Id*. at 662.  Thus, even though Plaintiff's claims against Jones are premised on her wrongful discharge, such allegations are premised on discrimination related to Plaintiff's pregnancy, which Plaintiff argues resulted in emotional distress.  Accordingly, any tort cause of action against Jones could proceed under *Foley* if the wrongful termination was deemed in violation of public policy.

In a similar vein, State Farm argues that Plaintiff cannot state a claim against Jones for emotional distress because managers, agents or representatives of employers are shielded from such liability when they act in their managerial capacity.  State Farm relies primary on *Kacludis v. GTE Sprint Communications Corporation*, 806 F. Supp. 866, 872 (N.D. Cal. 1992) and *McCabe v. General Foods Corporation*, 811 F.2d 1336, 1339 (9th Cir. 1987) to support this proposition.  However, the Court finds State Farm misinterprets *Kacludis* and finds *McCabe* inapposite.  For example, in *Kacludis*, the court held that an employee could not state a slander claim against his manager based on the privilege set forth in California Civil Code § 47(c), which defines privileged communications in the defamation context.  Workers' compensation law was not involved.  *See id.* at 872.  Thus, although the *Kacludis* court discussed workers' compensation exclusivity immediately prior to discussing the § 47(c) privilege, the privilege it applied was not based on workers' compensation law.  Additionally, *McCabe* is factually distinguishable, because the Ninth Circuit found managerial immunity barred plaintiff's claims for wrongful discharge because the plaintiff did not allege that the fraudulently joined managers acted outside the scope of their managerial duties or violated statutory law or public policy.  Such is not the case here.

Accordingly, because "[t]here is no authority for the proposition that [a manager] may not be

1  liable in tort for the intentional infliction of emotional distress providing all of the elements of that tort

2  are satisfied," the Court finds managerial immunity does not bar Plaintiff's claims against Jones.  *Calero*

3  *v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1178 (N.D. Cal. 2003) ("California case law is replete with cases

4  where conduct of the employer or one of its agents or employees is so outside the bounds of conduct

5  tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional

6  distress.").

7  ## 2.      Intentional and Negligent Infliction of Emotional Distress

8          Alternatively, State Farm argues Plaintiff's tenth and eleventh causes of action alleging

9  intentional and negligent infliction of emotional distress fail to state claim against Jones.  To state a

10  claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous

11  conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing,

12  emotional distress; (2) the suffering of severe or extreme emotional distress by the plaintiff; and (3) a

13  finding that the outrageous conduct actually and proximately caused the distress.  *Conley v. Roman*

14  *Catholic Archbishop of S.F.* (2000) 85 Cal. App. 4th 1126, 1133 (citing *Cervantez v. J.C. Penney Co.*

15  (1979) 24 Cal. 3d 579, 593).  To state a claim for negligent infliction of emotional distress, a plaintiff

16  must point to "negligent conduct that fundamentally caused the harm."  *Tu v. UCSD Med. Ctr.*, 201 F.

17  Supp. 2d 1126, 1131 (S.D. Cal. 2002).  "[W]here the conduct is intentional, it cannot be used as the

18  basis for a negligent infliction of emotional distress claim."  *Edwards v. U.S. Fidelity & Guar. Co.*, 848

19  F. Supp. 1460, 1466 (N.D. Cal. 1994) *aff'd* 74 F.3d 1245 (9th Cir. 1996).

20          State Farm contends the alleged conduct was not "extreme and outrageous" because Plaintiff

21  misconstrues the facts, and nonetheless, such conduct is not actionable because it was within the scope

22  of routine employment decisions.  However, as stated above, the Court finds Jones' conduct is not

23  preempted by the Workers' Compensation Act or barred by managerial immunity, because her conduct

24  could be deemed "avoidable and unnecessary to job performance."  *Ramirez v. Salvation Army*, 2006

25  WL 2934090 * 4 (N.D. Cal. 2006).  Accordingly, using the standard for fraudulent joinder, the Court

26  concludes there is at least a possibility that Plaintiff could show that Jones' conduct was "extreme and

27  outrageous."  *See e.g., Angie M. v. Super. Ct.* (1995) 37 Cal. App. 4th 1217, 1226 (finding that whether

28

"alleged behavior is sufficiently extreme as to constitute 'outrageous' behavior is properly determined by the fact finder after trial or possibly after discovery upon a motion for summary judgment"); *Asurmendi v. Tyco Elecs. Corp.*, 2009 WL 650386, *5 (N. D. Cal. Mar. 11, 2009) (stating that district courts applying the fraudulent joinder standard have generally found a possibility of liability, even where a plaintiff's claim appeared "relatively weak"); *Burris v. AT & T Wireless, Inc.*, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006) (granting motion to remand even where the complaint failed to allege outrageous conduct because it was possible that plaintiff could cure the deficiency by amendment).

The Court also finds State Farm's reliance on *King v. AC&R Adver.*, 65 F. 3d 764 (9th Cir. 1995) misplaced.  In *King*, the Ninth Circuit affirmed the trial court's grant of summary judgment in favor of the defendant on plaintiff's intentional infliction of emotional distress claim, stating that because the defendant's age related comments were not made directly to, or about the plaintiff, and the comments did not "exceed all bounds of that usually tolerated in a civilized society," such comments were not "extreme and outrageous" as a matter of law.  *Id*. at 770.  Here, however, Plaintiff alleges Jones made pregnancy related comments directly to her, her husband, and/or her husband's boss, all of which were allegedly posed in a threatening manner exceeding what would normally be tolerated in a civilized society.  Accordingly, although the Court makes no determination as to the inevitable success or failure of Plaintiff's intentional infliction of emotional distress claim, based on the allegations as currently plead, a state court could find Jones' behavior was extreme and outrageous.[5]

## II.  Attorney's Fees

Plaintiff argues she is entitled to attorney's fees and costs in the amount of $2,500.00 as a result of the improper removal.  However, Plaintiff's request is only included in her notice of motion, and is entirely absent from her memorandum of points and authorities, and her subsequent reply to Defendants' opposition.  Accordingly, although 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees," the Court finds

---

[5] The Court need not address whether Plaintiff has sufficiently alleged a claim for negligent infliction of emotional distress, because the Court finds Plaintiff's intentional infliction of emotional distress cause of action against Jones states a plausible claim for relief.

Plaintiff has failed to show that Defendants did not have an "objectively reasonable basis" for removal. *Lussier  v. Dollar Tree Stores, Inc*., 518 F.3d 1062, 1065 (9th Cir. 2008)  ("There is no question that Dollar Tree's arguments were losers. But removal is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.").  Accordingly, the Court **DENIES** Plaintiff's request for fees and costs incurred as a result of Defendants' removal.

### *CONCLUSION*

        For the reasons set forth above, the Court **GRANTS** Plaintiff's motion to remand and **DENIES** Plaintiff's motion for fees and costs.  The Clerk of Court is instructed to remand the action to San Diego Superior Court and close the case.


IT IS SO ORDERED.


DATED:  January 25, 2013

                                                                    _____
                                                                    Hon. Anthony J. Battaglia
                                                                    U.S. District Judge